IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 26, 2004

### IN RE:  C. LAC. AND D.L.

**Appeal from the Juvenile Court for White County**
**No. JU1503      Sammie E. Benningfield, Jr., Judge**

_____

**No. M2003-02164-COA-R3-PT - Filed March 17, 2004**

_____

Mother appeals the decision of the trial court which terminated her parental rights on two statutory grounds, abandonment and failure to comply with the permanency plan, and upon the finding that termination was in the best interest of the children.  Mother claims the evidence was insufficient to satisfy the clear and convincing evidentiary standard necessary to prove the statutory grounds for termination and that termination was in the best interest of the children.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined.  WILLIAM B. CAIN, J., filed a concurring opinion.

Lynn O. Sparkman, Sparta, Tennessee, for the appellant, A. LaC.[1]

Paul G. Summers, Attorney General and Reporter; and Douglas Earl Dimond, Assistant Attorney General for the appellee, Tennessee Department of Children's Services.

**OPINION**

This appeal arises out of the termination of parental rights of the mother of two children.  Mother's parental rights were terminated on two statutory grounds, abandonment and failure to comply with the permanency plan, and upon the finding that termination was in the best interest of the children.  Mother appeals claiming the evidence was insufficient to satisfy the clear and convincing evidentiary standard necessary to prove the statutory grounds for termination and that termination was in the best interest of the children.

Proceedings to terminate parental rights are statutory.  Parties seeking to terminate a parent's rights with regard to his or her child must prove two things.  They must prove the existence of at

[1] It is the practice of the middle section of this court to modify the names of the parties to maintain the anonymity of the children.

least one statutory ground for termination.[2]  Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).  Additionally, they must prove that terminating the parent's rights is in the child's best interests.  Tenn. Code Ann. § 36-1-113(c)(2);  *In re A.W.*, 114 S.W.3d 541, 545 (Tenn. Ct. App. 2003); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).  The factors to be considered in a "best interests" analysis are set forth in Tenn. Code Ann. § 36-1-113(i).

Persons seeking to terminate these rights must prove the elements of their case by clear and convincing evidence.  Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re A.W.*, 114 S.W.3d at 545.  Evidence that satisfies the clear and convincing evidence standard eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.  *In re Valentine*, 79 S.W.3d at 546; *Walton v. Young*, 950 S.W.2d 956, 960 (Tenn. 1997); *In re C.D.B.*, 37 S.W.3d 925, 927 (Tenn. Ct. App. 2000).  It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the propositions sought to be established.  *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000).

As a consequence of the clear and convincing standard, this court found it necessary to adapt Tenn. R. App. P. 13(d).  *In Re Adoption of Muir*, No. 2002-02963-COA-R3-CV, 2003 WL 22794524, *2 (Tenn. Ct. App. Nov. 25, 2003) explained the adaptation in detail.

> Because of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c), we must adapt Tenn. R. App. P. 13(d)'s customary standard of review for cases of this sort.  First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d).  Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise.  Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the grounds for terminating the biological parent's parental rights.  *Jones v. Garrett*, 92 S.W.3d at 838; *In re Valentine*, 79 S.W.3d at 546; *Ray v. Ray*, 83 S.W.3d at 733; *In re L.S.W.*, No. M2000-01935-COA-R3-JV, 2001 WL 1013079, at *5 (Tenn. Ct. App. Sept. 6, 2001), *perm. app. denied* (Tenn. Dec. 27, 2001).[3]

---

[2]The statutory grounds for terminating parental rights are found in Tenn. Code Ann. § 36-1-113(g).

[3]These decisions draw a distinction between specific facts and the combined weight of these facts.  Tenn. R. App. P. 13(d) requires us to defer to the trial court's specific findings of fact as long as they are supported by a preponderance of the evidence.  However, we must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion.  The Tennessee Supreme Court used this approach in *In Re Valentine* when it recognized the difference between the conclusion that a biological parent had not complied substantially with her obligations in a permanency plan and the facts relied upon by the trial court in support of this conclusion.  *In Re Valentine*, 79 S.W.3d at 548-49; *see also Jones v. Garrett*, 92 S.W.3d at 838.

Regrettably, in a number of termination of parental rights cases we have been unable to begin our evaluation to determine whether there was clear and convincing evidence to establish the grounds for termination and to establish whether termination was in the best interest of the child due to the failure of trial judges to provide written findings of fact. Fortunately, that is not an issue in this case. To the contrary, the trial judge set forth an extensive list of his findings of fact. The trial judge's findings of fact are as follows:[4]

> C.A.LaC. was born to Mother out of wedlock on October 10, 1989 in . . . California.
> D.A.L. was born to Mother out of wedlock on October 29, 1995 in . . . Michigan.
> . . . . .
> That C.A.LaC. and D.A.L. were placed in the custody of the Tennessee Department of Children's Services due to dependency and neglect on February 14, 2002 and have remained continuously in foster care since February 14, 2002.
> The Department of Children's Services was legal custodian of the children at the time these proceedings were commenced. There are no other parents, legal guardians or custodians or any other person who were entitled to notice of these proceedings pursuant to T.C.A. 36-1-117.
> Mother has not contributed to the support of the children since February 14, 2002. Mother is able bodied and able to work. She has held various jobs, although only for very brief periods of time, when she was not incarcerated, yet has only provided token support to her children.
> Mother was advised on March 6, 2002 and January 31, 2003 that willful failure to visit or willful failure to contribute to the support of the children was grounds for termination of parental rights.
> . . . . .
> The children were removed from the parent, Mother, as the result of a Petition filed in Juvenile Court in which the children were found to be dependent and neglected as defined by T.C.A. 37-1-102 and the children were placed in DCS custody. The Juvenile Court found that the DCS made reasonable efforts to prevent removal of the children or the circumstances of the children's situation prevented reasonable efforts from being made prior to the children's removal. DCS made every effort to prevent removal of these children, including filing a Petition for a court ordered Safety Plan which only [sic] so custody of the children [sic] if Mother violated the safety plan. For a period of four (4) months following removal, the DCS has made reasonable efforts to assist the parent, Mother to establish a suitable home for the children, but the parent has made no reasonable efforts to provide a suitable home and has demonstrated a lack of concern for the children to such a degree that it appears unlikely that Mother will be able to provide a suitable home for the

[4]To protect the identity of the children, the names of the parties as set forth in the trial judge's findings have been modified.

-3-

children at an early date. Therefore, the Defendant, Mother, has abandoned C.A.LaC. and D.A.L. Mother was hospitalized at Peninsula Hospital in Knoxville, from April 18, 2002 through April 25, 2002. She received mental health treatment while at Peninsula, but did [not] complete follow up treatment. Mother did not do anything else to comply with her permanency plan or to provide a suitable home for her children during this first four-month period. She also continued to abuse illicit drugs during this period.

The Defendant, Mother, was incarcerated from November 18, 2002 to February 26, 2003, in the Cumberland County Jail. She was incarcerated from July 29, 2002 through September 12, 2002, in the White County Jail. These are the only times the Defendant, Mother, has been incarcerated since the children were placed in custody on February 14, 2002. Mother willfully failed to support said children for four (4) months immediately preceding her incarcerations on July 29, 2002.

The Defendant, Mother, engaged in such conduct prior to incarceration as to exhibit a wanton disregard for the welfare of the children. Mother was on probation in both White and Cumberland Counties when the children came into custody on February 14, 2002. However, after the children were removed, she continued to abuse alcohol and drugs. She was charged with DUI on July 29, 2002. She was charged with violation of probation in both White and Cumberland Counties. She tested positive for marijuana on July 24, 2002, and admitted to her probation officer using marijuana in June of 2002.

Therefore, the Defendant, Mother, has abandoned C.A.LaC. and D.A.L.

The Defendant, Mother, has not substantially complied with the provisions of the permanency plans. The March 6, 2002 permanency plans on both children require Mother to attend and participate in school staffings and parent-teacher conferences for C., participate in budgeting education, complete A&D treatment, remain sober, follow through with medical treatment for her bi-polar disorder, take all medication as prescribed; keep her home adequately clean and free of environmental hazards; comply with her probation requirements, refrain from further illegal activity and complete parenting classes. The January 31, 2003 permanency plans for both children contains the above requirements, but also requires Mother to maintain stable housing with appropriate utilities; accept homemaker's services and establish a means of legal income to support herself and her children. These requirements are all reasonable related to remedying the conditions that necessitate foster care for the children. Mother has not completed budgeting education, because she has not maintained a job and has not maintained any reported source of legal income from which she could be taught to budget. She has not completed Alcohol and Drug Treatment. She was assessed for A&D treatment on October 3, 2002 and started treatment. However she did not complete this treatment due to her incarceration in November 2002. Prior to October 2002, she made no effort to obtain A&D treatment, even though Petitioner referred her to treatment in March 2002. She continued to abuse drugs. She continued to violate the law, resulting in new criminal charges. She did not comply with her rules of probation, resulting in being violated

and incarcerated in both White and Cumberland Counties. She did not consistently follow through with mental health treatment for her bi-polar disorder. She did not keep her home adequately clean and free of environmental hazards. She had a parenting assessment on June 28, 2002, but did not complete the parenting training. Since her release from jail on February 26, 2003, she has started services again, but has not completed them.

Mother was advised on March 6, 2002 and January 31, 2003 that failure to comply with the permanency plans was grounds for termination of parental rights.

The children have been removed from the custody of their parent for more than six (6) months.

The conditions which led to the removal of the children from the home of Mother still exist and other conditions exist in her home, which in all probability would cause the children to be subject to further abuse and/or neglect, making it unlikely that the children could be returned to her in the near future. Mother is mentally ill and requires regular and ongoing medical supervision and compliance with her medication in order to maintain stability. When she has not been incarcerated, she has not complied with her mental health treatment. She has not been able to stay focused on any of the requirements of the permanency plan. When Petitioner has tried to assist Mother in complying with the permanency plans, Mother has been unable to stay focused on what Petitioner has tried to tell her. Prior to incarceration, Mother continued to abuse illicit drugs. She continued to be involved in criminal activity. While incarcerated, she has participated in Narcotics Anonymous, but when not incarcerated has not been able to remain focused on A&D treatment. She has only maintained a job for brief periods of time. It does not appear to Petitioner that she will be able to maintain a stable home or stable job.

There is little likelihood that these conditions will be remedied at an early date so that the children can be returned to Mother in the near future.

The continuation of the parent or guardian and child relationship greatly diminishes the child's chance of an early integration into a stable and permanent home.

Mother has not made an adjustment of circumstances, conduct or conditions as to make it in the children's best interest to return home in the foreseeable future.

Mother's mental and/or emotional status would be detrimental to the children and/or prevent her from effectively providing care and supervision for the children.

Mother has failed to effect a lasting adjustment after reasonable efforts by available social agencies for such a duration of time that lasting adjustment does not reasonably appear possible.

Mother's use of alcohol or controlled substances render her consistently unable to care for the children.

There is criminal activity in Mother's home.

Mother has not paid a reasonable portion of the children's substitute physical care and maintenance when financially able to do so.

Mother has not paid child support consistently with the child support guidelines promulgated by the Department pursuant to T.C.A. 36-5-101.

While Mother has visited the children in the four (4) months preceding the filing of this Petition or her incarceration, she has not maintained regular visitation or contact with the children. Mother's visitation has been sporadic due to the Petitioner frequently not being able to get in touch with her to schedule visits or Mother stating she could not schedule visits because she thought she would be in jail.

For all of the foregoing reasons, it is in the best interest of the children and the public that any and all parental rights that Mother may hold to the children, C.A.LaC. and D.A.L., be forever terminated and that the complete custody, control, and guardianship of said children be awarded to the State of Tennessee, Department of Children's Services, with the right to place said children for adoption and to consent to adoption in *loco parentis*.

Final Decree of Guardianship (August 4, 2003).

Before we evaluate whether there is sufficient evidence to establish the grounds for termination, we must ascertain whether the Department made reasonable efforts to prevent the need for removal and thereafter to return the children safely to their home for this is not a case where reasonable efforts are excused.[5] Unless remaining with the parent exposes the children to substantial risk of harm, the Department must make reasonable efforts to prevent the need for removal of the children prior to separating the children from the family, Tenn. Code Ann. § 37-1-166(a)(1), and thereafter to return the children to their home unless it exposes the children to substantial harm. Tenn. Code Ann. § 37-1-166(a)(2); Tenn. Code Ann. § 37-1-166(g)(2).

The Department must establish by clear and convincing evidence that it made reasonable efforts to reunite the children with the parent. *In re Valentine*, 79 S.W.3d at 546; *In re C.M.M. & S.D.M.*, No. M2003-01122-COA-R3-PT, 2004 WL_____ at *11, (Tenn. Ct. App. March 9, 2004); Tenn. Code Ann. § 36-1-113(c). This burden requires that the Department present sufficient evidence to enable us to conclude, without serious or substantial doubt, that the efforts were reasonable under the circumstances. *In re Valentine*, 79 S.W.3d at 546; *Walton v. Young*, 950 S.W.2d 956, 960 (Tenn. 1997); *In re C.D.B.*, 37 S.W.3d 925, 927 (Tenn. Ct. App. 2000).

In an effort to prevent removal of these children, the Department entered into a Plan of Action with Mother on April 11, 2001 and obtained a court ordered Safety Plan. The purpose of the Plan of Action and the Safety Plan was to assist Mother with the hope of avoiding having to take custody. The Department, with the assistance of an agency, Family Support Services (FSS), provided in-home services for approximately six months. FSS was in the home to address "educational neglect" along with concerns regarding parental supervision and drug issues. Despite

---

[5]The Department is not required to make reasonable efforts every time it removes a child. In certain aggravated circumstances, such as severe child abuse, the Department is relieved of this duty. Tenn. Code Ann. 37-1-102, Tenn. Code Ann. 37-1-166(g)(4) and Tenn. Code Ann. 36-1-113(g)(7).

the in-home services, problems persisted in the home. Specifically, the children were seen walking great distances to school, and each time the Department or agency representative would visit the home they would be greeted by different men. Moreover, problems persisted with excessive un-excused school absences. Due to truancy and other school issues, Mother's continued drug use, probation problems, and general lack of supervision of the children, the petition to declare the children dependent and neglected was filed on January 25, 2002 and the children were taken into custody.

During the four months following removal, the Department made similar efforts to assist Mother to establish a suitable home for the children. These efforts were met with similar rebuffs by Mother who again failed to reciprocate and who again demonstrated a lack of concern, thereby rendering it near impossible for the Department to succeed in its efforts to reunite the family. Some of the problems with Mother included her providing false information concerning where she was or why she could not pursue the permanency plan. On one occasion Mother told the Department case manager, Jennifer Forester, that she would be in jail over the next few weeks; however, Ms. Forester learned that Mother did not go to jail, at least not on that occasion. On other occasions, Mother would disappear and Ms. Forester was unable to locate her to pursue the permanency plan. On yet other occasions, Mother would tell Ms. Forester that she would not be able to pursue the plan for the immediate future due to various reasons including her probation duties and alleged job-seeking efforts. Based upon the evidence before us, we have no serious or substantial doubt that the Department, and Ms. Forester in particular, made the necessary efforts to satisfy the reasonable efforts criteria. Accordingly, we find that the Department exerted reasonable efforts, thereby satisfying the statutory requirements.

It now becomes our responsibility to determine whether there is clear and convincing evidence to establish either of the two statutory grounds found by the trial court, being abandonment or failure to comply with the permanency plan. It is only necessary to prove one statutory ground for termination. *In re D.L.B.,*118 S.W.3d 360, 367 (Tenn. 2003)**.**

A parent's rights may be terminated when he or she commits "abandonment" as defined in Tenn. Code Ann. § 36-1-102. In pertinent part, "abandonment" is defined as follows:

> (ii) The child has been removed from the home of the parent(s) . . . as the result of a petition . . . in which the child was found to be a dependent and neglected child, . . . and the child was placed in the custody of the department or a licensed child-placing agency, that the Juvenile Court found . . . that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) . . . to establish a suitable home for the child, but the parent . . . made no reasonable efforts to provide a suitable home and . . . demonstrated a lack of concern for the

child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date;

Tenn. Code Ann. § 36-1-102(1)(A)(ii).

The Department alleged that Mother abandoned C.A.LaC. and D.A.L. by willfully failing to contribute to the support or make reasonable payments towards the support of said children for more than four (4) consecutive months prior to the filing of the petition. The record establishes the following facts:

* The children were removed as the result of a Petition filed in Juvenile Court in which the children were found to be dependent and neglected and were placed in Department custody.

* Mother did not support her children during the four months immediately preceding her incarcerations on July 29, 2002, though she did occasionally provide gifts and modest amounts of funds to the children.

* Mother was on probation in both White and Cumberland Counties when the children came into custody on February 14, 2002. However, after the children were removed, she continued to abuse alcohol and drugs. She was charged with DUI on July 29, 2002. She was charged with violation of probation in both White and Cumberland Counties. She tested positive for marijuana on July 24, 2002, and admitted to her probation officer using marijuana in June of 2002. Her conduct prior to incarceration exhibited a wanton disregard for the welfare of the children.

* Mother was incarcerated from November 18, 2002 to February 26, 2003, in the Cumberland County Jail. She was incarcerated from July 29, 2002 through September 12, 2002, in the White County Jail

The statute, Tenn. Code Ann. § 36-1-102(1)(A)(iv), provides that "abandonment" also occurs when a parent, who is incarcerated at the time of the filing of the petition, "has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child." Our courts have held that a parent's previous criminal conduct, if coupled with a history of substance abuse, may constitute a "wanton disregard for the welfare of the child." *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000). Mother's criminal conduct and history of substance abuse, combined with her failure to provide parental supervision and support, provide the requisite clear and convincing evidence to support the trial court's finding that the children's mother abandoned them.

We now consider whether there is sufficient evidence to establish by clear and convincing evidence that Mother failed to satisfy her duties under the permanency plan. A parent's rights may be terminated for her substantial non-compliance with responsibilities contained in a permanency plan. Tenn. Code. Ann. § 36-1-113(g)(2). Whether Mother was in substantial noncompliance is a

question of law which we review *de novo* with no presumption of correctness. *In re Valentine,* 79 S.W.3d 539, 548 (Tenn. 2002).

The Department alleged that Mother failed to substantially comply with the permanency plans. The March 6, 2002 permanency plans (one for each child) required Mother to attend and participate in parent-teacher conferences, participate in budgeting studies, complete alcohol and drug treatment, remain sober, follow through with medical treatment for her bi-polar disorder, take medication as prescribed, keep the home reasonably clean and free of environmental hazards, comply with her probation, and complete parenting classes. The subsequent permanency plans, dated January 31, 2003, contained the above and required Mother to maintain stable housing with appropriate utilities and establish a source of income to support herself and her children. The trial court found these requirements to be reasonable to remedy the conditions and Mother does not contest the reasonableness of the requirements.

> Substantial noncompliance is not defined in the termination statute. The statute is clear, however, that noncompliance is not enough to justify termination of parental rights; the noncompliance must be substantial. Black's Law Dictionary defines "substantial" as "[o]f real worth and importance." *Black's Law Dictionary* 1428 (6th ed.1990). In the context of the requirements of a permanency plan, the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to that requirement. Terms which are not reasonable and related are irrelevant, and substantial noncompliance with such terms is irrelevant.

*In re Valentine,* 79 S.W.3d at 548-49.

The record establishes the following facts concerning Mother's efforts to comply with the permanency plan:

* Mother has not completed budgeting education, she has not maintained a job and has not maintained an income.

* Mother was hospitalized at Peninsula Hospital in Knoxville, from April 18, 2002 through April 25, 2002. She received mental health treatment while at Peninsula, but did not complete follow up with the recommended treatment for her bi-polar disorder.

* Mother has not consistently followed through with recommended mental health treatment.

* Prior to October 2002, Mother made little effort to obtain drug and alcohol treatment, even though Ms. Forester referred her to treatment in March 2002.

-9-

* Mother was assessed for such treatment on October 3, 2002 and started treatment; however, she did not complete treatment, in part due to her incarceration in November 2002.

* Mother has not completed alcohol and drug treatment.

* Mother continued to abuse drugs.

* Mother continued to violate the law, resulting in new criminal charges.

* Mother failed to comply with her probation. Her probation was violated and she was incarcerated in White County and thereafter in Cumberland County.[6]

* Mother did not keep her home clean and free of environmental hazards. Further, her home, a trailer, burned while she was incarcerated for a probation violation and she has been unable to obtain substitute housing. On occasion she has slept in the burned out trailer.

* Mother had a parenting assessment on June 28, 2002 but did not complete training.

The foregoing establish that Mother failed to comply with the majority of the permanency plan requirements though she partially complied with a few of them. Moreover, her poor record prior to the filing of the termination petition provides very little contrast to her poor efforts thereafter. Improvement toward compliance should be considered in a parent's favor. *See In re Valentine,* 79 S.W.3d at 549; *State Dept. of Human Services v. Defriece*, 937 S.W.2d 954, 961 (Tenn. Ct. App.1996) (stating that decision reversing a trial court's termination of parental rights was influenced by evidence of improvement in mother's ability to provide a stable environment for child). Conversely, failure to improve should not be considered, especially in the presence of the Department's reasonable efforts.

Based upon the foregoing, we therefore find there is clear and convincing evidence in the record to support the trial court's finding that the children's mother failed to comply with the permanency plans.

We must now consider whether there is sufficient evidence to establish by clear and convincing evidence that it is in the children's best interest to terminate their mother's parental rights. In order to terminate parental rights, a court must not only determine that at least one statutory ground exists justifying termination, but also that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(1) and (2). The manner in which such a determination is made is outlined in Tenn. Code Ann. § 36-1-113(i). This statute provides that in determining whether

---

[6]It should be noted that the criminal conduct upon which the latter of the two probation violations was based occurred prior to the establishment of the permanency plans.

termination of parental rights is in the best interest of the child, the court shall consider, but is not limited to:

> (1) Whether the parent . . . has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent . . . ;
>
> (2) Whether the parent . . . has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> . . . . .
> (7) Whether the physical environment of the parent's . . . home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent . . . consistently unable to care for the child in a safe and stable manner;
>
> (8) Whether the parent's . . . mental and/or emotional status would be detrimental to the child or prevent the parent . . . from effectively providing safe and stable care and supervision for the child;

Tenn. Code Ann. § 36-1-113(i).

> The record establishes the following facts concerning the best interests of the children:
>
> *     The children have been removed from the custody of their parent for more than six (6) months, actually sixteen (16) months at the time of the hearing.
>
> *     The conditions which led to the removal of the children continue to exist and other conditions continue to exist, which in all probability would cause the children to be subject to further abuse and/or neglect, making it unlikely that the children could be returned to Mother in the near future.
>
> *     Mother is mentally ill which condition requires medical supervision and compliance with her medication to maintain stability.
>
> *     When Mother has not been incarcerated, she has not complied with her mental health treatment.
>
> *     Prior to the last two incarcerations, Mother continued to abuse illegal drugs and continued to be involved in criminal activity.
>
> *     While incarcerated Mother participated in Narcotics Anonymous but when released she has been unable, or unwilling, to continue treatment.

\*       Mother failed to provide evidence to establish that she will be able to maintain a stable home or stable job or remain drug free and be compliant with her medications.

\*       Mother only maintained a job for brief intervals.

\*       When the Department, particularly Mrs. Forester, attempted to assist Mother in complying with the permanency plans, Mother was unable, or unwilling, to do what was required of her.

\*       There is little likelihood that these conditions will be remedied at an early date so that the children can be returned to their mother in the near future.

\*       Mother has not paid a reasonable portion of the children's substitute physical care and maintenance when financially able to do so.

\*       Mother's visitation has been sporadic. Though she visited the children in the four (4) months preceding the filing of the petition, she has not maintained regular visitation or contact.

The above facts lead to the firm conclusions that the continuation of the mother and child relationship greatly diminishes the children's chances of early integration into a stable and permanent home, that Mother's mental and/or emotional status prevent her from effectively providing care and supervision for the children, that she has failed to make a lasting adjustment after reasonable efforts by the Department and social agencies, that her habitual use of alcohol and illegal drugs render her unable to care for the children, and that there was criminal activity in the home. It is further apparent that Mother has made no adjustment in her circumstances, despite more than reasonable efforts by Ms. Forester of the Department, that Mother has continued to abuse substances, that she has failed to provide a safe and stable home, that she has not effectively addressed her mental health issues, and that her continued inability to conquer her substance abuse and deal with her mental health issues, combined with her unstable lifestyle, provide clear and convincing evidence that termination was in the best interest of the children. Based upon the above, we find there is clear and convincing evidence in the record to support the trial court's finding that is was in the best interest of the children to terminate all parental rights of their mother.

For the reasons set forth above, we affirm the trial court in all respects and remand this matter to the trial court for such proceedings as may be necessary. Costs on appeal are assessed against the mother of the children, Appellant, Ms. A.LaC.

                                       _____
                                       FRANK G. CLEMENT, JR., JUDGE